**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**MARGARET DOVE,**

    **Plaintiff,**

vs.                                                   **CASE NO.: 6:04-cv-226-Orl-22JGG**

**CONTINENTAL CASUALTY
COMPANY, an Illinois Corporation,**

    **Defendant.**

_____

**ORDER**

**I. INTRODUCTION**

In this Florida Civil Rights Act (FCRA)[1] case before the Court on diversity jurisdiction, Margaret Dove sues her former employer, Continental Casualty Company (CNA), for alleged race-based discrimination and retaliation. Defendant has filed a motion for summary judgment on Plaintiff's claims, to which Plaintiff has responded in opposition. For the reasons stated herein, Defendant's motion is granted.

**II. FACTUAL BACKGROUND**

CNA is an insurance organization serving businesses and individuals with a broad range of insurance products and related services. (Riley Aff. ¶ 4.) CNA employed Dove, an African-American, as a customer service representative (CSR) in its inbound call center in Maitland, Florida from November 13, 2000 until her termination on October 10, 2002. (Riley Aff. ¶ 6.) Dove was responsible for answering telephone calls from agents and customers

---

[1] Fla. Stat. ch. 760.01 *et seq.* (2004).

concerning insurance claims. (Riley Aff. ¶ 10.) At the time of the alleged discriminatory actions, Plaintiff's immediate supervisor was CSR team leader Bruce Gimbel. (Riley Dep. at 47.) Anais Riley was the other CSR team leader and also supervised Dove's work. (Dove Dep. at 68; Riley Aff. ¶ 9.)

**Plaintiff's Termination**

Dove acquired her real estate license in July 2002. (Riley Aff. ¶ 17.) CNA alleges that it discovered, through Dove's phone calls and correspondence at work, described below, that Dove was working on her real estate business on company time and, as a result, fired her. (Riley Dep. at 56-57.)

Riley and Gimbel monitored the CSRs' performance by using the company's CENTREVU system, which tracked the amount of time each CSR spent on the phone using a series of activity codes. (Riley Aff. ¶ 13.) Between September 30, 2002 and October 9, 2002 Dove spent between forty-three minutes to over two hours per day in "AUX 0 status." (Riley Aff. ¶ 17, Ex. 1).[2] AUX 0 status indicates the employee is unavailable to take work telephone calls from the queue. (Riley Aff. ¶ 14.) Riley states that one reason the employee would be unavailable to take calls is that they were taking a personal call or engaging in personal business. *Id*.

---

[2] Riley's Affidavit states that Dove's time in AUX 0 increased from a daily average of sixty minutes to ninety minutes between August and October 2002. Exhibit 1 to Riley's affidavit does not, however, include records for any times other than September 30, 2002 to October 9, 2002.

Riley monitored Dove's telephone calls on October 10, 2002.[3] She states that: (1) at 12:40 p.m., Dove was discussing the sale of a house with a real estate client on the telephone; (2) at 1:25 p.m., Dove was discussing the sale of a house with a buyer on the phone; and (3) at 1:37 p.m., Dove called a customer to set up an appointment to go see houses. (Riley Aff. ¶ 20.) Riley recorded each call on a form entitled "Customer Service Quality Review." (*Id.*, Ex. 4.)

On October 8, 2002, Riley found a letter on CNA's printer from Dove to "Orlando West Associates," which read as follows:

> I my [*sic*] name is Margaret Dove, and I am a Realtor with 100% Real Estate. I just want to send a letter to inform you that over the last couple of weeks. [*sic*] I have contacted the Real Estate Company Simon at (317) 685-7324 left and left [*sic*] several messages but is unable [*sic*] to get a return call regarding my inquires [*sic*] of the property listed above. I have a client that is interested in the property and I would like to make an offer.
> If you can contact me at a suitable time I would appreciate it, and thank for taking the time.
> [Contact information]
> 
> Sincerely,
> Margaret Dove

(Riley Aff. ¶ 18; Dove Dep., Ex. 18.)

The following day, Riley found a cover sheet for a ten-page fax on the fax machine in the mailroom. This cover sheet was addressed to an "Erica Jean" from Dove and read: "Please fax the seller disclosure to the fax # listen [*sic*] above." (Riley Aff. ¶ 19; Dove Dep., Ex. 17.) Dove acknowledged at her deposition that she used CNA's fax machine to fax documents once and to receive documents twice. (Dove. Dep. at 168.) Plaintiff also admits that she typed the

---

[3] Riley and Gimbel, the two CSR supervisors, had access and listened to CSRs' telephone calls in the ordinary course of business. (Riley Aff. ¶ 20; Dove Dep. at 99.)

letter to Orlando West Associates at work and that she may have typed the second fax at work. (*Id*. at 176-77.)

Riley reported Dove's activities to her immediate supervisor, Sandra Roberson, and to Human Resources Supervisor Carolyn Rohrbach Dragon. (Riley Aff. ¶ 21; Rohrbach Dec. ¶ 9.) After reviewing Dove's activities, they jointly decided to fire Dove for selling real estate on company time using company resources, which they determined was a violation of CNA's Professional Conduct Policies. *Id*.

A CNA document entitled "Our Commitment to Professional Conduct" provides in relevant part:

> Conflicts of Interest
> As employees of CNA we must be sure that our personal interests do not conflict with the company's interest or give the appearance of impropriety . . . . The basic principle is this: Avoid using CNA time, resources or information -- or your position as a CNA employee -- for personal benefit, the benefit of your family, friends or a member of your household.
>
> Fraud Dishonesty and Criminal Conduct
> Fraud, dishonesty or other criminal conduct relating to CNA's property, employees or operations are, of course, forbidden. Prohibited acts include threats of violence; violating the company's drug policy; theft of employee or company property; using company equipment or employees to perform non-company work; misuse of the company's computer, telephone or mail resources; and falsifying company records or expense reports.

(Riley Aff., Ex. 5.)

Plaintiff signed an agreement on the day she was hired stating that she received, read, and understood a copy of this policy, although she testified during her deposition that she did not recall seeing it. (Dove Dep. at 75-76, Ex. 10.)

Dove contends that she was fired because she is African-American. Specifically, she alleges that six non-African American employees, who also had second business ventures,

were not fired for their activities. CNA contends that the employees were not fired because their actions did not violate company policy. The facts pertaining to these employees are discussed in detail below.

**Alleged Harassing Conduct**

CNA has a written policy prohibiting discrimination, harassment, and retaliation. (Riley Aff. ¶ 29, Ex. 6). Dove alleges that sometime in August or September of 2002 she complained to Gimbel that Riley was harassing her. (Dove Dep. at 83-84.) She told Gimbel that Riley asked her to send Dove's emails to her to review, monitored Dove's calls, stood at Dove's desk and looked at her, and changed the policy about giving out the disability extension number to clients. (*Id*. at 83-90.) These were the only complaints that Dove made. (*Id*. at 90.) She did not complain that Riley was harassing her because of her race. (*Id*. at 106.)

Plaintiff identifies three other allegedly racially discriminatory remarks by Riley. First, Riley asked Dove "why you all people always eat and stay so skinny." (Dove Dep. at 106-07.) Riley contends that she wanted to know how thin people manage to keep their weight down. (Riley Aff. ¶ 32.) Second, Plaintiff alleges that when she asked Riley about the status of an employment application Dove's friend made, Riley stated, "I'm not hiring any black people right now, I just need Spanish people." (Dove. Dep. at 105.) Riley contends that she did not hire Dove's friend because she needed bilingual CSRs and Dove's friend was not bilingual. (Riley Aff. ¶ 33.) Finally, another African-American employee told Dove that Riley asked her "why black people always put hair - additional hair in their hair, why don't they wear their own hair." (Dove. Dep. at 108.) There is no evidence that Dove was present during this exchange. *See id*.

### III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993), *reh'g and reh'g en banc denied,* 16 F.3d 1233 (11th Cir. 1994).

### IV.   DISPARATE TREATMENT

#### A.   Direct Evidence

In certain cases, an employer's discrimination may be established by direct evidence, which demonstrates discriminatory intent without inference or presumption. *Standard v. ABEL Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).[4] The Eleventh Circuit has "marked severe

---

[4] Because Florida's Civil Rights Act is patterned after Title VII, federal case law dealing with Title VII claims is also applicable to claims brought pursuant to the FCRA.

(continued...)

-6-

limits on the kind of language to be treated as direct evidence." *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998). Ultimately, language amounting to direct evidence must: (1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus. *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).

Riley's alleged statement, "I'm not hiring any black people right now, I just need Spanish people" cannot be considered direct evidence in Dove's claim for discriminatory discharge because it does not specifically relate to her termination. *See Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997) (holding that decisionmaker's statement that he wanted to hire a man for a position instead of a woman at the time of the plaintiff's request for promotion was not direct evidence of discrimination in claim for discriminatory discharge). Riley's statement will be considered as circumstantial evidence in the following analysis. *See id*. at 1393-94.

### B. Circumstantial Evidence

Circumstantial evidence disparate treatment claims are evaluated under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). "Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *Id*. "When the plaintiff establishes a prima facie case, . . . the burden of production shifts to the employer to articulate a

---

[4](...continued)
*Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *see also Fla. State Univ. v. Sondel*, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996).

legitimate, nondiscriminatory reason for its actions." *Id.* "If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Id.*

### 1.   **Prima Facie Case**

In order to prevail on a claim of discriminatory discharge, Plaintiff must present evidence sufficient to prove a prima facie case showing that: (1) she belongs to a racial minority; (2) she was subjected to adverse employment action; (3) CNA treated "similarly situated" employees outside her classification more favorably; and (4) she was qualified to do the job. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (citing *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir.1997)). It is undisputed that Dove, an African-American, is a member of a protected class and that she suffered an adverse employment action, namely discharge. Defendant contends that Plaintiff cannot show that CNA treated similarly situated employees more favorably.

Plaintiff claims that six non-African-American employees were treated more favorably than she: Rosemary Ellis, Misty Cobb, Evelyn Custodio, Carol Adams, Bruce Gimbel, and Kim Ericson. Ellis, Cobb and Custodio allegedly sold cosmetic products at work by passing around catalogues from which other employees could order. (Dove Dep. at 212.) Adams sold internet services for GoldfileGroup.com, and although Plaintiff testified Adams gave her a business card, Adams maintains that she did her work from home with her own equipment. (Dove Dep. at 222; Adams Dec. ¶ 4.) Gimbel sold tickets for S&S Tickets and Travel at a separate office, but he gave away or sold extra tickets at CNA when CNA employees requested

them. (Gimbel Dep. at 68; McCreary Dep. at 46.) Ericson sold her son's school fundraiser products at work. (Ericson Dep. at 32-33.)

In assessing whether employees are similarly situated, the Eleventh Circuit has directed that "the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citing *Maniccia v. Brown*, 171 F.3d 1365, 1368-69 (11th Cir. 1999)).[5] The activities of Ellis, Cobb, Custodio, Adams, Gimbel, and Ericson were informal, internal, and, as such, did not create the appearance to the outside world of an association with CNA, which the company policies clearly try to discourage.[6] More importantly, however, none of the five alleged comparators violated company policy by using CNA equipment, such as the fax machine and computer, or by calling customers during their work day. "[U]sing company equipment to . . . perform non-company work" is a clearly "prohibited act" under the policy that Plaintiff stated she understood. (Riley Aff. Ex. 5.) Because Plaintiff did engage in these acts, while the other

---

[5] *But see Alexander v. Fulton County*, 207 F.3d 1303, 1334 (11th Cir. 2000) (stating "the law does not require a 'similarly situated' individual be one who has 'engaged in the same or nearly identical conduct' as the disciplined plaintiff. Instead, the law only requires "similar" misconduct from the similarly situated comparator) (citing *Osram Sylvania, Inc. v. Teamsters Local Union 528,* 87 F.3d 1261, 1265 (11th Cir.1996).) Although the Court finds the later language in *Silvera* controlling, the Court notes that the alleged comparators' offenses in the instant case are neither "similar" nor "nearly identical" to Plaintiff's undisputed violation of company policy.

[6] Defendant also argues that Adams and Gimbel are not similarly situated to Plaintiff because they were not supervised by Riley. (Dove Dep. at 221.) The Eleventh Circuit has noted that different supervisors may prevent employees from being considered similarly situated, if there is evidence of differing management styles that would explain differences in discipline. *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 n. 7(11th Cir. 1998), *modified on other grounds*, *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321 (11th Cir. 1998). As in *Jones*, there is no evidence in the instant case of the managers' respective styles by which the Court could find the employees were not similarly situated.

identified employees did not, the Court finds that Plaintiff was not similarly situated to any of her alleged comparators. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186-187 (11th Cir. 1984) (finding that employees were not similarly situated where comparator did not violate company's moonlighting policy, but the plaintiff did).

### 2. Legitimate Non-Discriminatory Reason and Pretext

Even had Plaintiff proven her prima facie case, CNA has proffered a legitimate, non-discriminatory reason for her termination: Dove violated company policy by using company equipment and company time to pursue her real estate business. Defendant presents additional evidence that a white male employee was terminated for reviewing medical records for another company at work using CNA's fax machine. (Gimbel Dep. at 66.)

Plaintiff has come forth with no colorable evidence rebutting Defendant's explanation for her termination. Riley's statement to Dove, "I'm not hiring any black people right now, I just need Spanish people," by itself, does not undermine the non-discriminatory reason that was allegedly the basis for the decision to terminate Plaintiff, especially given that two other employees had at least equal responsibility for the decision. *See Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002) (holding that supervisor's comment that an employee did not deserve her job because she was a woman was not sufficient evidence of pretext where there was objective evidence demonstrating that the female plaintiff violated company procedure and that a male who had also violated company procedure was fired).

Nor does the fact that Plaintiff received standard merit increases on October 1, 2001 and September 30, 2002 amount to evidence of pretext; Dove received these raises before Riley discovered her real estate business activities. Dove also alleges that she should have been warned before being summarily terminated. Title VII does not, however, "take away an

employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Nix*, 738 F.2d at 1187; *see also Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (1991) (stating, in an ADEA context, that "federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions'") (citations omitted).

Because Plaintiff has failed to identify evidence sufficient to prove both her prima facie case of disparate treatment and that Defendant's non-discriminatory reason for her termination is pretextual, Defendant's motion for summary judgment on this claim must be granted.

## V.   HOSTILE WORK ENVIRONMENT

CNA also moves for summary judgment on Dove's racial harassment claim. Plaintiff has responded by denying that she brought a harassment claim (Doc. 35 at 2), despite relevant language in Count I of her complaint (Doc. 2, ¶¶ 20-23). Although Plaintiff has now waived this claim, in the interest of thoroughness, the Court also disposes of the claim on its merits.

To establish a hostile work environment claim, Plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic, such as race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The *McDonnell-Douglas* burden-shifting framework does not apply to harassment cases. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 510 (11th Cir. 2000).

Plaintiff identifies three discriminatory remarks allegedly based on the protected characteristic of race: (1) Riley asked Dove "why you all people always eat and stay so

-11-

skinny;" (2) Riley told Plaintiff, "I'm not hiring any black people right now, I just need Spanish people;" and (3) Riley asked another employee "why black people always put hair - additional hair in their hair, why don't they wear their own hair."[7] The question of whether these incidents were sufficiently "severe and pervasive" so as to alter the terms or conditions of Plaintiff's employment includes a subjective and an objective component. Courts may evaluate the objective component by considering the following factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Courts must examine the conduct in context, and not as isolated acts. *Id.*

Even considering the first ambiguous statement regarding Dove's weight and the third statement, which was apparently not made in Dove's presence, the conduct Plaintiff complains of was infrequent, comprising three incidents in almost two years of employment. *See Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp. 2d 1314, 1325 (M.D. Fla. 2002) (holding that supervisor's two comments to African-American employee in eight-month period about shooting and lynching blacks, while offensive, were not pervasive); *see also Mendoza*, 195 F.3d at 1249 (finding five instances of conduct over eleven months too infrequent); *compare Johnson*, 234 F.3d at 509 (finding fifteen incidents in four months is frequent). The statements were not physically threatening, nor does Plaintiff allege that Riley's comments interfered with

---

[7] As described in the background section, Dove also alleges that Riley reviewed her emails, monitored her calls, stood at her desk and looked at her, and changed the policy about giving out the disability extension number to clients. These actions, even if considered harassing behavior instead of managerial responsibilities, are not based on a protected trait, such as race.

her job performance. At the most, the Court finds that each statement was "a mere offensive utterance," for which a hostile work environment claim does not lie.

Title VII is not a general civility code, *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), and it is violated only "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The statements at issue in this case, while arguably offensive, simply do not amount to severe or pervasive harassment based on Plaintiff's race. Assuming Plaintiff has not waived her hostile work environment claim, Defendant's motion for summary judgment on this claim is granted.

## VI. RETALIATION

A plaintiff alleging a retaliation claim relying on circumstantial evidence must begin by establishing a *prima facie* case consisting of the following elements: (1) the claimant engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the plaintiff's protected activities. *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001). Statutorily protected expression includes internal complaints as well as complaints filed with the EEOC. *Id*. at 1201. A plaintiff engages in "statutorily protected activity" when she protests an employer's conduct that is actually lawful if she demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (citing *Little v. United Tech., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir. 1997)). This involves a subjective and an objective component: Dove must show that her belief was "honest and bona fide" and that the belief, even if mistaken, was "objectively reasonable." *Id*.

As described above, Dove complained about harassment only once. Her complaint to

Gimbel did not implicate any protected characteristic or suspect class of persons. Plaintiff merely complained of her supervisor's managerial behavior toward her as an employee. Dove's belief that Riley's behavior was unlawful, even if bona fide, is not objectively reasonable. Such complaints about managers may commonly occur in the workplace, but without more, do not relate to unlawful employment practices within the purview of Title VII.

Even if Dove proved her prima facie case, her claims fail because CNA has set forth a legitimate, non-discriminatory reason for her termination, which is discussed in detail above. Because Plaintiff has failed to prove that she engaged in statutorily protected expression and failed to show CNA's reason for firing her was pretextual, Defendant's motion for summary judgment on her retaliation claim must be granted.

## VII. CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. 21), filed February 1, 2005, is GRANTED.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida this 10th day of June, 2005.

_____
ANNE C. CONWAY
United States District Judge